**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Neurobrands, LLC       :
501 Santa Monica Blvd.     :
Second Floor        :  Case No. 14-2321
Santa Monica, CA  90401,    :
            :  Judge: Edmund A. Sargus
    Plaintiff,     :
            :  Magistrate: Judge Elizabeth Preston Deavers
  v.         :
            :
Keystone Distributing, Ltd., (also known as :
Buckeye Distributing),     :
            :
Buckeye Distributing, Inc.    :
c/o CC&J Agents, Inc.     :
4996 Foote Road      :
Medina, Ohio  44256     :
            :
TSJ/Buckeye, LLC      :
c/o CC&J Agents, Inc.     :
4996 Foote Road      :
Medina, Ohio  44256     :
            :
Terry D. Bigham      :
584 S. Third Street      :
Columbus, Ohio 43215     :
            :
James P. Gilbride      :
6255 Williams Dr.      :
Broadview Heights, Ohio  44147  :
            :
Paula J. Gilbride      :
6255 Williams Dr.      :
Broadview Heights, Ohio  44147  :
            :
and           :
            :
Gilbride Family Holdings, LTD   :
c/o CC&J Agents, Inc.     :
225 N. Market St.      :
Wooster, Ohio  44691     :
            :
    Defendants.    :

## FIRST AMENDED VERIFIED COMPLAINT

Now comes Plaintiff, Neurobrands, LLC ("Neurobrands" or "Plaintiff"), and for its First Amended Verified Complaint against Defendants, alleges and states as follows:

## INTRODUCTION

1.    This case is about Defendant, Keystone Distributing, LTD's (also known as Buckeye Distributing) (referred to, without distinction, herein as "Keystone LTD" or "Defendant Keystone") breach of the Distributor Agreement executed by it and Plaintiff, Neurobrands, LLC on or about February 1, 2011. The Distribution Agreement gave Keystone LTD a territory of 64 counties in Ohio and 8 counties in Kentucky for distribution of beverages manufactured and sold by Neurobrands. After Keystone LTD breached the Distributor Agreement by failing or refusing to pay for products it had purchased, Neurobrands repeatedly, but unsuccessfully, demanded that Keystone LTD comply with its contractual obligations and pay the past due invoices. When Keystone LTD failed or refused to comply or otherwise respond to Neurobrands, Neurobrands notified Keystone LTD that the Distribution Agreement was deemed terminated pursuant to Paragraph 9(B) due to Keystone LTD's breach of the Distribution Agreement, which stated as one of the grounds for termination, Keystone LTD's "breach of any provision of this Agreement."

2.    In the time since the filing of the initial Verified Complaint against Keystone LTD, Plaintiff confirmed that Keystone LTD transferred Plaintiff's product to at least 1 Sub-Distributor, Brown Distributing Company ("Brown Distributing"), which conducts its business from Newark, Ohio. Brown Distributing's General Manager, Mark Urban, contacted and spoke to a representative of Plaintiff on Friday, November 14, 2014, and put Plaintiff on notice that it intended sell Plaintiff's products to random people on the street for $.10 per case if Plaintiff did not immediately buy the products back from Brown Distributing.

3.      Not wanting its products sold on the street by an unapproved Sub-Distributor, and having no other immediate option, Plaintiff was forced to buy back its own product from Brown Distributing. Of course, Keystone LTD had "upcharged" the cases it sold to Brown Distributing by $.50 per case so Plaintiff had to pay Brown Distributing Two Thousand, One Hundred and Seventy-Five and 00/100 Dollars ($2,175) to get back $2,100 of its own product.

4.      This case is also about the misuse of multiple legal entities to the detriment of Plaintiff (and Keystone LTD's other creditors), as well as the failure of officers, members and/or co-owners of Keystone LTD to observe corporate formalities resulting in damages to Plaintiff (and Keystone LTD's other creditors). In the time since the filing of the initial Verified Complaint against Keystone LTD, Plaintiff has learned that Keystone LTD, the only entity with which Plaintiff entered into the Distribution Agreement, apparently considers itself a conglomeration of the following companies: **Defendants Buckeye Distributing, Inc., TSJ/Buckeye, LLC and Keystone Distributing, LTD (collectively the "Keystone LTD Conglomerate")** (*see* Exhibit "A," which is a true and correct copy of a December 19, 2014, from legal counsel for the companies in the Keystone LTD Conglomerate).

5.      Plaintiff understands that Defendant Buckeye Distributing, Inc. came into existence prior to the time that Keystone LTD entered into the Distribution Agreement with Plaintiff. Keystone LTD admitted this fact in its First Amended Answer ("FAA") (*see* [Doc. #13], ¶1). According to filings with the Ohio Secretary of State, Buckeye Distributing, Inc. first filed as a Corporation for Profit on or about October 16, 2000.

6.      According to filings with the Ohio Secretary of State, Defendant TSJ/Buckeye, LLC came into existence on or about December 23, 2011, and its Agent and "Incorporator" is the same as

3

the Agent previously appointed for Keystone LTD – CC&J Agents, Inc. (Robert C, Berry, Vice President).

7.      With respect to Keystone LTD, according to filings with the Ohio Secretary of State, on or about April 30, 2007, an entity known as "Gilbride Family Holdings, LTD," acted as the "Incorporator" of Keystone LTD. Defendant Gilbride Family Holdings, LTD came into existence on or about March 10. 2006.

8.      Also on or about April 30, 2007, according to the Ohio Secretary of State filings, Defendant James P. Gilbride gave consent to Gilbride Family Holdings, LTD, on behalf of an entity known as "Keystone Distributing, Inc.," to use the "similar name," of "Keystone Distributing, Ltd."

9.      According to filings with the Ohio Secretary of State, it was also Defendant James P. Gilbride who signed as the "Authorized Representative" for Gilbride Family Holdings, LTD on the Original Appointment of Agent for Keystone LTD. At that time, Defendant James P. Gilbride appointed CC&J Agents, Inc. as Agent for Keystone LTD and it was Robert C. Berry, Vice President, who accepted that appointment on behalf of CC&J Agents, Inc.

10.      Although Keystone LTD seems to ignore this fact in its First Amended Answer, according to filings with the Ohio Secretary of State, on or about October 24, 2012, a Fictitious Name Registration was filed on behalf of Keystone LTD and signed by Defendant James P. Gilbride. The Fictitious Name registered on October 24, 2012 was simply "Buckeye Distributing," which is why Plaintiff initially sued "Keystone Distributing, Ltd. (also known as Buckeye Distributing)."

11.      Defendants Terry D. Bigham, James P. Gilbride, Paula J. Gilbride and Gilbride Family Holdings, LTD, upon information and belief, are and at all times relevant hereto were officers of, members of or otherwise had ownership interests in the Keystone LTD Conglomerate.

## PARTIES

12.    Plaintiff, Neurobrands, LLC, is a limited liability company with its principal place of business in Santa Monica, California.

13.    Defendant Keystone Distributing, LTD (also known as "Buckeye Distributing") is a limited liability company with its principal place of business, upon information and belief, in Broadview Heights, Ohio.  Keystone LTD, upon information and belief, also maintains an office and distribution center in Columbus, Ohio to which sales invoices and products are delivered by Plaintiff at Keystone LTD's request.

14.    Defendant Buckeye Distributing, Inc. is a corporation for profit with its principal place of business, upon information and belief, in Franklin County, Ohio.

15.     Defendant TSJ/Buckeye, LLC is a limited liability company with its principal place of business, upon information and belief, in Broadview Heights, Ohio.

16.    Defendant Terry D. Bigham is an individual who, upon information and belief, was at all times relevant hereto a resident of Franklin County, Ohio.

17.    Defendant James P. Gilbride is an individual who, upon information and belief, was at all times relevant hereto a resident of Cuyahoga County, Ohio.

18.    Defendant Paula J. Gilbride is an individual who, upon information and belief, was at all times relevant hereto a resident of Cuyahoga County, Ohio.

19.    Defendant Gilbride Family Holdings, LTD is a limited liability company with its principal place of business, upon information and belief, in Broadview Heights, Ohio.

## JURISDICTION AND VENUE

20. This Court has personal jurisdiction over all of the parties pursuant to Ohio Revised Code §2307.382 because, in relation to the causes of action asserted by Plaintiff, all the parties acted directly, or through an agent, and transacted business in Ohio.

21. This Court has subject matter jurisdiction under 28 U.S.C. §1332, because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

22. Venue is proper in this judicial district pursuant to 28 USC §1391 in that Defendant Buckeye Distributing, Inc. resides in Franklin County and Franklin County, Ohio is within the Eastern Division of the U.S. District Court for the Southern District of Ohio. Pursuant to 28 USC §1391, venue is also, or alternatively, proper in this judicial district because a substantial part of the events or omissions giving rise to the claims occurred.

## FACTS COMMON TO ALL CLAIMS

### The Distribution Agreement

23. On or about February 1, 2011, Plaintiff and Keystone LTD (by President, James Gilbride) signed the Distributor Agreement at issue, which has never been revised in writing or otherwise. Upon information and belief, Defendant has a true and correct copy of Distribution Agreement, which Plaintiff has not attached because it contains confidential business information about the parties and the parties are prohibited from disclosing such information to the public. Keystone LTD represented itself in the Distribution Agreement as a Distributor that is:

> " … in the business of beverage distribution … [and] has adequate facilities, transport equipment and personnel to distribute [Plaintiff's] brands and desires to accept responsibility for distribution in the market described in this Agreement.

(Distribution Agreement, p.1, RECITALS).

6

24.     The Distribution Agreement was in full force and effect until it was terminated by Plaintiff in accordance with Paragraph 9 ("TERMINATION"). (Distribution Agreement, p.2, Paragraph 2).

25.     The Distribution Agreement set forth certain obligations and rights to which Plaintiff and Keystone LTD had agreed. Among those rights and obligations contained in the Distribution Agreement are the following:

a.  Keystone LTD agreed to use "good faith and commercially reasonable efforts" to resell" Neurobliss, Neurosonic, Neurosleep, Neurogasm, Neurotrim, Neurosport, Neuroaqua and Neurosun beverages in all "market segments" other than internet sales. (Distribution Agreement, pp.1-2, Paragraphs 1 A&C, 3 A).

b.  Keystone LTD was to provide Plaintiff with "periodic and reasonable forecasts of quantities of product necessary to meet market demand" and submit written purchase orders identifying specific information (purchase order number and date, type and quantity of each product ordered, unit and total price of products ordered, suggested delivery date, and all relevant shipping information). (Distribution Agreement, p.3, Paragraph 4 B(1)-(5)).

c.  Keystone LTD's payment to Plaintiff for the products purchased was to be 2% 10, net 30 days from the date of the invoice. (Distribution Agreement, pp.3-4, Paragraph 6).

d.  Keystone LTD was to submit to Plaintiff monthly sales and inventory data (including customers which had purchased products) within one week after the beginning of each calendar month. (Distribution Agreement, p.4, Paragraph 7 B).

e.  Keystone LTD was to grant Plaintiff "reasonable access during normal business hours on 24 hours' notice to inspect" Keystone LTD's facilities, inventory of products and trucks, as well as to inspect Keystone LTD's records relating to sale of the products. (Distribution Agreement, p.4, Paragraph 7 E).

f.  Plaintiff limited Keystone LTD's license to sell the products in the following ways – Keystone LTD only had the license to sell within the specified 64 counties in Ohio and 8 counties in Kentucky while the Distribution Agreement was operative **and** the license was "non-sublicensable, non-assignable, and non-transferable." (Distribution Agreement, p.5, Paragraph 8 C).

g.  Plaintiff could terminate the Distribution Agreement "for cause" in the event of Keystone LTD's breach of any provision of the Agreement; Keystone LTD's "material deviation from the standard of performance it provided" when the

7

Agreement was signed; or Keystone LTD's "decrease in case sales of Products" by 25% or more during any 12 month period as compared to the immediately preceding 12 month period. (Distribution Agreement, pp.5-6, Paragraph 9 B).

h.   Keystone LTD is to defend, indemnify and hold Plaintiff harmless from "any and all claims, suits, demands, actions, costs, liabilities and losses, including reasonable attorney's fees arising out of, or resulting from" Keystone LTD's "failure to perform its obligations," negligent acts or unapproved misleading claims, advertising or representations regarding the products. (Distribution Agreement, p.7, Paragraph 10 B).

i.   Keystone LTD was to keep "occurrence basis comprehensive general liability insurance (including contractual liability with respect to the indemnity obligations set forth in Paragraph 10)" for the benefit of Plaintiff and Keystone LTD. (Distribution Agreement, pp.7-8, Paragraph 10 E).

j.   In a case to enforce provisions of the Distribution Agreement, "the prevailing party shall be entitled to recover reasonable attorney's fees and other litigation expenses and court costs." (Distribution Agreement, p. 8, Paragraph 11 B).

k.   The rights granted by Plaintiff to Keystone LTD in the Distribution Agreement were unique to Keystone LTD and were not to be "transferred in whole or in part" without prior express consent in writing from Plaintiff. (Distribution Agreement, p.9, Paragraph 13).

l.   The failure of Plaintiff "to insist upon full performance of any of the terms, covenants and conditions of" the Distribution Agreement "or to exercise any right to terminate" the Distribution Agreement, was not to be "deemed a waiver of such provision or right." (Distribution Agreement, p.10, Paragraph 15).

m.   Plaintiff and Keystone LTD agreed that "the obligations of the parties under" the Distribution Agreement could be "modified or amended only by a written agreement signed by authorized officers of both parties." (Distribution Agreement, p.10, Paragraph 16).

### Keystone LTD's Failure or Refusal to Pay Plaintiff for Products

26.   Keystone LTD began placing purchase orders with Plaintiff beginning in October 2011, and continued doing so on a fairly regular basis until approximately September 15, 2014, which was the last date that Keystone LTD submitted any purchase orders to Plaintiff. At the time of those last 2 purchase orders placed on September 15, 2014, Keystone LTD was uncharacteristically 31 days late on payments of 2 other sales invoices (invoice numbers

SI11521 and SI11522) from purchase orders Keystone had placed with Plaintiff on or about June 27, 2014. Keystone LTD wanted a total of 3,036 cases (a cases is a 12-pack) of Plaintiff's products in exchange for payment to Plaintiff of $42,504. On or about July 18, 2014, Plaintiff delivered the products requested by Keystone LTD as follows: 1,452 cases to Buckeye Distributing at 3717 Paragon Drive, Columbus, Ohio 43228; and 1,584 cases to Buckeye Distributing at 215 Ken Mar Industrial Parkway, Broadview Heights, Ohio 44147.

27.     Beginning at least as early as September 19, 2014, Plaintiff began its attempts to contact Keystone LTD regarding past due payments. At that time, there were only the 2 payments past due (for sales invoice numbers SI11521 and SI11522) in the total amount of $42,504. As is its custom and practice when a distributor is late making payments on sales invoices for delivered products, Plaintiff's attempts to contact Keystone LTD are ongoing and have included, but are not limited to, telephone calls from Plaintiff's Billing/Accounting department, emails from Plaintiff's Accounting Manager, telephone calls and emails from Plaintiff's Executive Director, and a letter from Plaintiff's legal counsel. Plaintiff's various emails, letters, telephone calls and voicemail messages have largely gone unanswered and on the rare occasions when a person was reached, the response was not to immediately send payment for the overdue amounts but instead to stall.

28.     At the time that Plaintiff's legal counsel sent an overnight letter to Keystone LTD (on October 13, 2014), Keystone LTD was delinquent on 2 additional payments due (for sales invoice numbers SI11629 and SI11630) in the total amount of another $42,504, bring the total past due amount owed by Keystone LTD to Plaintiff to $85,008. Those sales invoices were from purchase orders Keystone LTD had placed with Plaintiff on or about August 12, 2014, in which Keystone LTD wanted a total of 3,036 cases of Plaintiff's products in exchange for payment to Plaintiff of

$42,504.  On or about August 29, 2014, Plaintiff delivered all of the products requested by Keystone LTD to Buckeye Distributing at 215 Ken Mar Industrial Parkway, Broadview Heights, Ohio 44147.

29.     In the October 13, 2014 letter, Plaintiff's legal counsel also reminded Keystone LTD that payment on the final 2 sale invoices (invoice numbers SI11700 and SI11701) in the amount of $42,504 was due on October 24, 2014.  Those 2 sales invoices were from purchase orders Keystone LTD had placed with Plaintiff on or about September 15, 2014, in which Keystone LTD wanted a total of 3,036 cases of Plaintiff's products in exchange for payment to Plaintiff of $42,504.  On or about September 26, 2014, Plaintiff delivered all of the products requested by Keystone LTD to Buckeye Distributing at 215 Ken Mar Industrial Parkway, Broadview Heights, Ohio 44147.

30.     Lastly, the October 13, 2014 letter Plaintiff's legal counsel sent to Keystone LTD provided notice that the "Distribution Agreement is deemed terminated because of 'Distributor's breach of any provision of this Agreement' – specifically, Keystone's breach of its payment obligations under Paragraph 6."  As of the date of this filing, Keystone LTD is past due on the payment of 6 sales invoices for products Plaintiff delivered to Keystone LTD, as requested by Keystone LTD.  The total amount of unpaid sales invoices is $127,512.

### Keystone LTD's Unapproved Transfer of Plaintiff's Products to an Unapproved Sub-Distributor for Distribution to Unknown Markets in Unknown Territories

31.     Within the last week, Plaintiff learned for the first time that Keystone LTD, upon information and belief, has transferred at least 162 cases of Plaintiff's products to at least 1 Sub-Distributor about which Plaintiff did not have notice and did not approve to distribute its products.  At the time of this filing, the only Sub-Distributor of which Plaintiff has become aware is Brown Distributing Company ("Brown Distributing"), which is a corporation for profit that has its principal place of business, upon information and belief, in Newark, Ohio within the geographic boundaries of the Southern District of Ohio, Eastern Division.  On Friday, November 14, 2014, Brown

10

Distributing's General Manager, Mark Urban, contacted Plaintiff and asked Plaintiff to buy back its own cases of products and threatened to go sell them to random people on the street for $.10 per case if Plaintiff does not buy them back.

32. Thus, Keystone LTD has exceeded the limited license granted by Plaintiff to Keystone LTD as part of the Distribution Agreement, which was non-sublicensable, non-assignable, and non-transferable (Distribution Agreement, p.5, Paragraph 8 C). Keystone LTD has also exceeded the rights Plaintiff granted it, which were unique to Keystone LTD and could not to be "transferred in whole or in part" without prior express consent in writing from Plaintiff, which consent has not been given (Distribution Agreement, p.9, Paragraph 13).

### All for One and One for All -- the Conduct of Defendants Buckeye Distributing, Inc., TSJ/Buckeye, LLC, Keystone Distributing, LTD, Terry Bigham, James Gilbride, Paula Gilbride and Gilbride Family Holdings, LTD that Results in Their Liability

33. Looking back at copies of checks provided to Plaintiff in payment for products delivered to Keystone LTD, it appears that Keystone LTD viewed itself, together with Defendants Buckeye Distributing, Inc. and TSJ/Buckeye, LLC, as one intermingled entity (Plaintiff has referred to that intermingled entity herein as the "Keystone LTD Conglomerate." It also appears from those same checks that the companies within the Keystone LTD Conglomerate held themselves out to Plaintiff as all being interchangeable and responsible for payment of Plaintiff's invoices (in one instance, even misrepresenting the supposed relationship of two (2) of the companies).

34. For example, in a six (6) month time frame in 2014, Defendant Paula J. Gilbride signed checks to Plaintiff from separate bank accounts that were, upon information and belief, in the following names on the following dates: "Keystone Distributing, LTD DBA Buckeye Distributing, Inc." (March 10, 2014); "TSJ/Buckeye" (July 1, 2014); and "Buckeye Distributing, Inc." (August 8, 2014) (see true and correct copies of the above-referenced checks which are attached together as

Exhibit "B.") Moreover, all three (3) of the entities that wrote the referenced checks to Plaintiff listed their address on the checks as "215 Ken Mar Industrial Parkway, Broadview Heights, Ohio 44147." (*Id.*)

35. It also appears that, at least in March 2014, even Keystone LTD lost track of what entity it was "doing business as," misrepresenting itself on the above-referenced March 2014 check as doing business as "Buckeye Distributing, Inc." Of course, in its First Amended Answer, Keystone LTD admitted that "…**Buckeye Distributing, Inc.** was a **separate legal entity and was distinct from Defendant Keystone Distributing, Ltd.**" (*see* [Doc. #13], ¶1) (emphasis added).

36. Plaintiff is informed and believes, and on that basis alleges, that Keystone LTD failed to observe corporate formalities.

37. Plaintiff is informed and believes, and on that basis alleges, that the companies in the Keystone LTD Conglomerate have all, at one point in time and possibly even currently, had Plaintiff's product within their possession, custody or control.

38. Plaintiff is informed and believes, and on that basis alleges, that beginning in approximately the summer of 2014 and continuing at least up until the time that the initial Verified Complaint was filed by Plaintiff, Defendants Terry Bigham, James Gilbride, Paula Gilbride and Gilbride Family Holdings, LTD, in their roles as officers of, members of and/or co-owners of the companies in the Keystone LTD Conglomerate began to avoid and otherwise delay Plaintiff's efforts to collect payment.

39. Plaintiff is also informed and believes, and on that basis alleges, that beginning in approximately the summer of 2014 and continuing at least up until the time that the initial Verified Complaint was filed by Plaintiff, the companies in the Keystone LTD Conglomerate (*i.e.*,

Defendants Buckeye Distributing, Inc., TSJ/Buckeye, LLC and Keystone LTD), also began to avoid and otherwise delay Plaintiff's efforts to collect payments for products delivered to it.

40.     The Distribution Agreement is only between Plaintiff and Keystone LTD and, thus, Keystone LTD is the only Defendant that Plaintiff sued in the initial Verified Complaint.  By this First Amended Verified Complaint, Plaintiff now seeks hold certain officers, members and/or co-owners of the companies in the Keystone LTD Conglomerate (*i.e.*, Defendants Terry Bigham, James Gilbride, Paula Gilbride and Gilbride Family Holdings, LTD) jointly and severally liable for the damages recoverable by Plaintiff for Keystone LTD's breach of contract.

41.     Plaintiff is informed and believes, and on that basis alleges, that beginning in approximately the summer of 2014 and continuing at least up until the time that the initial Verified Complaint was filed by Plaintiff, Defendants Terry Bigham, James Gilbride, Paula Gilbride and Gilbride Family Holdings, LTD had knowledge that the companies in the Keystone LTD Conglomerate were grossly undercapitalized and already (or soon to be) insolvent.  Indeed, Plaintiff will not be surprised to learn in discovery that Keystone LTD was insolvent at the time they were incurring at least some of the debt with Plaintiff.

42.     Plaintiff is informed and believes, and on that basis alleges, that at some point in 2014, Defendants Terry Bigham, James Gilbride, Paula Gilbride and Gilbride Family Holdings, LTD each converted, or helped another convert, Keystone LTD's assets for their own personal use by requiring entities and individuals doing business with Keystone LTD to pay Keystone LTD **in cash only**.  Plaintiff is informed and believes, and on that basis alleges, that Defendants Terry Bigham, James Gilbride, Paula Gilbride and Gilbride Family Holdings, LTD converted Keystone LTD's assets in such a manner to have them for their own use and to keep them from being reflected in the books and records of Keystone LTD when it finally decided to work with its "secured creditors" to

have a "controlled liquidation" of the Keystone LTD Conglomerate's assets (*see* Luper Neidenthal & Logan's December 19, 2014 letter attached as Exhibit "A").

## Count One – Breach of Contract

43.     Plaintiff re-alleges and incorporates by reference paragraphs 1-43 of this Verified Complaint as if fully rewritten herein.

44.     Defendant through its actions breached multiple provisions of the Distribution Agreement, which breaches include but are not limited to: failure to pay for products delivered by Plaintiff in response to multiple purchase orders placed by Defendant and, upon information and belief, using an unknown and unapproved Sub-Distributor to sale Plaintiff's products.

45.     Plaintiff performed all conditions precedent imposed on it by the Distribution Agreement.

46.     As a direct and proximate result of each Defendant's acts of breach, Plaintiff has suffered damages in an amount to be determined at trial, which are at least $129,687, plus pre- and post-judgment interest, compensatory damages, costs, expenses, attorney fees, and other relief as may be appropriate.

## Count Two – Pierce the Corporate Veil

47.     Plaintiff re-alleges and incorporates by reference paragraphs 1-47 of this First Amended Verified Complaint as if fully rewritten herein.

48.     Defendants Terry Bigham, James Gilbride, Paula Gilbride and Gilbride Family Holdings, LTD exercised such complete control over Keystone LTD that it had no separate mind, will, or existence of its own.

49.     As a direct and proximate result of the fraud, illegal acts, or a similarly unfair or harmful acts committed by Defendants Terry Bigham, James Gilbride, Paula Gilbride and Gilbride

Family Holdings, LTD, Plaintiff has suffered damages in an amount to be determined at trial, which are at least $129,687, plus pre- and post-judgment interest, compensatory damages, costs, expenses, attorney fees, and other relief as may be appropriate.

<u>**Count Three – Conversion**</u>

50.     Plaintiff re-alleges and incorporates by reference paragraphs 1-50 of this First Amended Verified Complaint as if fully rewritten herein.

51.     Plaintiff had a percentage of ownership or the right to possession of a portion of Keystone LTD's assets converted by Defendants Buckeye Distributing, Inc., TSJ/Buckeye, LLC, Terry Bigham, James Gilbride, Paula Gilbride and Gilbride Family Holdings, LTD.

52.     Defendants Buckeye Distributing, Inc., TSJ/Buckeye, LLC, Terry Bigham, James Gilbride, Paula Gilbride and Gilbride Family Holdings, LTD converted Plaintiff's property rights by a wrongful act or disposition of Keystone LTD's assets.

53.     As a direct and proximate result of the conversion by Defendants Buckeye Distributing, Inc., TSJ/Buckeye, LLC, Terry Bigham, James Gilbride, Paula Gilbride and Gilbride Family Holdings, LTD, Plaintiff has suffered damages in an amount to be determined at trial, which are at least $129,687, plus pre- and post-judgment interest, compensatory damages, costs, expenses, attorney fees, and other relief as may be appropriate.

<u>**Prayer for Relief**</u>

**WHEREFORE,** Plaintiff Neurobrands, LLC, requests that this Court:

a.   Temporarily restrain and preliminarily enjoin Defendants from supplying, distributing and/or selling any of Plaintiff's remaining products covered by the Distribution Agreement (*i.e.*, Neurobliss, Neurosonic, Neurosleep, Neurogasm, Neurotrim, Neurosport, Neuroaqua and Neurosun beverages) that are in Defendants'

possession, custody or control, no matter where the remaining products are located, to any natural person or entity in any location;

b.  Order Defendants to permit Plaintiff to take immediate possession of all of Plaintiff's remaining products covered by the Distribution Agreement (*i.e.*, Neurobliss, Neurosonic, Neurosleep, Neurogasm, Neurotrim, Neurosport, Neuroaqua and Neurosun beverages) that are in Defendants' possession, custody or control, no matter where the remaining products are located, in order to store them in a safe and secure place pending the outcome of this litigation so as to avoid, and protect consumers from tampering and to protect Plaintiff from damage to its business or reputation that may be caused by unlicensed, unapproved, fraudulent or unsafe sales of the remaining products;

c.  Order Plaintiff to store its remaining products covered by the Distribution Agreement (*i.e.*, Neurobliss, Neurosonic, Neurosleep, Neurogasm, Neurotrim, Neurosport, Neuroaqua and Neurosun beverages) that were in Defendants' possession, custody or control, but were taken into Plaintiff's possession, custody and control pursuant to this Court's preliminary order, in a safe and secure place pending the outcome of this litigation;

d.  Preliminarily restrain and preliminarily enjoin Plaintiff from supplying, distributing and/or selling any of its remaining products covered by the Distribution Agreement (*i.e.*, Neurobliss, Neurosonic, Neurosleep, Neurogasm, Neurotrim, Neurosport, Neuroaqua and Neurosun beverages) that were in Defendants' possession, custody or control, but were taken into Plaintiff's possession, custody and control pursuant to

this Court's preliminary order, no matter where the remaining products are located, to any natural person or entity in any location; and

e.  Enter a final Judgment that:

    i.   declares Defendant Keystone Distributing, LTD's actions alleged herein breached the Distribution Agreement;

    ii.   declares that the Distribution Agreement was properly terminated by Plaintiff based on Defendant Keystone Distributing, LTD's actions alleged herein;

    iii.   declares Plaintiff the rightful owner of its remaining products covered by the Distribution Agreement (*i.e.*, Neurobliss, Neurosonic, Neurosleep, Neurogasm, Neurotrim, Neurosport, Neuroaqua and Neurosun beverages) that were in Defendants' possession, custody or control, but were taken into Plaintiff's possession, custody and control pursuant to this Court's preliminary order;

    iv.   declares that the corporate veil of Defendant Keystone Distributing LTD's is pierced and that Defendants Terry Bigham, James Gilbride, Paula Gilbride and Gilbride Family Holdings, LTD are jointly and severally liable to Plaintiff to the same extent as Defendant Keystone Distributing, LTD;

    v.   declares that Defendants Buckeye Distributing, Inc., TSJ/Buckeye, LLC, Terry Bigham, James Gilbride, Paula Gilbride and Gilbride Family Holdings, LTD are jointly and severally liable to Plaintiff for converting its property rights;

vi. permanently enjoins Defendants from supplying, distributing and/or selling any of Plaintiff's remaining products covered by the Distribution Agreement (*i.e.*, Neurobliss, Neurosonic, Neurosleep, Neurogasm, Neurotrim, Neurosport, Neuroaqua and Neurosun beverages) that are in Defendants' possession, custody or control, no matter where the remaining products are located, to any natural person or entity in any location; and

vii. awards Plaintiff damages in an amount to be proven at trial against Defendants, as well as pre- and post-judgment interest, compensatory damages, costs, expenses, attorney fees, and other relief as may be appropriate.

Respectfully Submitted,

JAMES E. ARNOLD & ASSOCIATES LPA

By: */s/* James E. Arnold
    James E. Arnold  (0037712)
    Trial Attorney
    Marnie C. Lambert          (0073054)

    115 West Main Street, 4th Floor
    Columbus, Ohio 43215
    Tele:     (614) 460-1600
    Fax:      (614) 469-1066
    Email: jarnold@arnlaw.com
    Email: mlambert@arnlaw.com

    *Attorney for Plaintiff Neurobrands, LLC*

**<u>VERIFICATION</u>**

State of California    :
                 :      ss.
Los Angeles County   :

     I verify under penalty of perjury that the facts in the foregoing First Amended Verified Complaint are true and correct to the best of my knowledge and belief.

     Executed on February 17, 2015.

 

James Kellahin
Executive Director for Diana Jenkins, founder neurobrands,llc

## CERTIFICATE OF SERVICE

This is to certify that I have this 20th day of February, 2015, electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

/s/ James E. Arnold
James E. Arnold



**EXHIBIT**

A

# Luper
# & Neidenthal
# Logan

*A Legal Professional Association*

December 19, 2014

**William B. Logan, Jr.**

Direct Dial: 614-229-4449
Fax: 866-345-4948
wlogan@LNLattorneys.com

RE: Buckeye Distributing, Inc.; TSJ/Buckeye LLC; Keystone Distributing, Ltd.

Dear Creditor:

As some of you already know, our office has been representing Buckeye Distributing, Inc. (Buckeye), TSJ/Buckeye LLC (TSJ) and Keystone Distributing, Ltd. (Keystone)(in combination, referred to herein as the Companies) which are in the process of liquidating their assets. The Companies have two secured lenders, Fifth Third Bank (Fifth Third) and Lighthouse Financial Corp. (Lighthouse)(together, the "Secured Creditors").

Economic conditions have forced this liquidation, resulting in the closing of all of the Companies' business locations. The Secured Creditors have been cooperating with the Companies in the liquidation, as it was jointly determined that a controlled liquidation would be the best way to maximize the proceeds of the assets of the Companies.

At this time the Secured Creditors are owed approximately $400,000, and remaining inventory and accounts receivable are worth about $300,000 in a liquidation setting. Therefore, it is likely that there will not be any money available to pay trade creditors once the liquidation has been completed.

In the event that there is any money left over after the liquidation, our office will report back to all of the creditors to let them know that a distribution would be made to the trade creditors. Throughout the liquidation process, the Companies have not made preferred payments to trade creditors, and have not "picked and chosen" some trade creditors to pay, while others have remained unpaid—all creditors of the same class have been treated equally.

As of this time, there has been only one collection lawsuit filed, and that lawsuit is being defended, because of valid defenses to the claims stated in that lawsuit. After 14 years in business, the Companies are having difficulty conceding that the Companies no longer are able to compete in the marketplace. The Companies have appreciated the many years of dealing with their suppliers, and are sorry that all of the debts could not be paid. If you have any questions, you may call this office, and we will try to answer your questions.

Very truly yours,

William B. Logan

WBL/tls



CENTRAL OHIO'S ONLY MEMBER OF MERITAS
A WORLDWIDE ALLIANCE OF INDEPENDENT LAW FIRMS

1200 LeVeque Tower • 50 W. Broad Street • Columbus, Ohio 43215-3374
(614) 221-7663 • Fax: (866) 345-4948 • www.LNLattorneys.com



EXHIBIT

B

ORIGINAL CHECK HAS A COLORED BACKGROUND PRINTED ON CHEMICAL REACTIVE PAPER - SEE BACK FOR DET

VOID VOID VOID VOID VOID

Keystone Distributing, LTD
DBA Buckeye Distributing Inc
215 Ken Mar Industrial Pkwy
Broadview Heights, OH 44147
USA

Fifth Third Bank
PO Box 630900
Cincinnati, OH 45263

No. 0000008167

DATE
3/10/2014

AMOUNT
************16,632.00

PAY        Sixteen thousand six hundred thirty-two and xx / 100 Dollars

11700003  20140331 >122016066< TRUNCATED Neurobrand

TO THE
ORDER
OF

Neuro Brands, LLC
501 Santa Monica Blvd, 2nd Floor
Santa Monica, CA 90401
USA

AUTHORIZED SIGNATURE

VOID VOID VOID VOID VOID

⑈0000008167⑈ ⑆041002711⑆ ⑈7522037196⑈

| VENDOR: | Neuro | | | | CHECK: | 0000008167 | DATE: | 3/10/2014 |
|---|---|---|---|---|---|---|---|---|
| REMIT TO: | Neuro Brands, LLC | | | | COMMENT: | | | |

| INVOICE | DATE | VOUCHER | COMMENT | | AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|---|---|
| SI10912 | 1/22/2014 | 0000038619 | | | 16,632.00 | 0.00 | 16,632.00 |
| | | | | TOTALS: | 16,632.00 | 0.00 | 16,632.00 |

Buckeye Distributing, Inc.

**TSJ/Buckeye**
215 Ken Mar Industrial Parkway
Broadview Heights, OH 44147

Fifth Third Bank
P.O. Box 630900
Cincinnati, OH 45263

010393

7/01 20 14

PAY _____ Twenty-two thou~~sand~~ ~~**********~~ ~~*********~~ TRUNCATED Neurobra DOLLARS $*******22,176.00

TO
THE
ORDER
OF

Neuro Brands, LLC
501 Santa Monica Blvd, 2nd Floor
Santa Monica, CA 90401
USA

⑈010393⑈ ⑆041002711⑆ 7523020738⑈

Security features are included.
Details on back.

DETACH AND RETAIN THIS STUB
THIS CHECK IS FOR PAYMENT OF ITEMS DESCRIBED BELOW
IF INCORRECT PLEASE NOTIFY US PROMPTLY. NO RECEIPT NECESSARY.

TSJ/Buckeye

| VENDOR | Neuro | | | | CHECK: | 0000010393 | | DATE: 7/1/2014 |
| REMIT TO: | Neuro Brands, LLC | | | | COMMENT: | | | |

| VENDOR INVOICE | DATE | VOUCHER | COMMENT | | AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|---|---|
| 11312 | 5/5/2014 | 0000040622 | | | 22,176.00 | 0.00 | 22,176.00 |

Buckeye Distributing, Inc.
215 Ken Mar Industrial Pkwy
Broadview Heights, OH 44147
USA

PNC Bank, N.A. 070

001173

| | DATE | AMOUNT |
|---|---|---|
| | 8/8/2014 | ***********42,504.00 |

PAY

Forty-two thousand five hundred four and xx/100 Dollars    57830005  20140818 >122016066< TRUNCATED Neurobrand

TO THE
ORDER
OF

Neuro Brands, LLC
501 Santa Monica Blvd, 2nd Floor
Santa Monica, CA 90401
USA

AUTHORIZED SIGNATURE

🔒 SECURITY FEATURES INCLUDED. DETAILS ON BACK 🔒

⑈001173⑈ ⑆041000124⑆ 4007809468⑈

---

| VENDOR: | Neuro | | CHECK: | | DATE: | |
|---|---|---|---|---|---|---|
| REMIT TO: | Neuro Brands, LLC | | COMMENT: | 0000001173 | 8/8/2014 | 001173 |

| INVOICE | DATE | VOUCHER | COMMENT | AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|---|
| SI11423 | 6/4/2014 | 0000041309 | | 22,176.00 | 0.00 | 22,176.00 |
| SI11424 | 6/4/2014 | 0000041310 | | 20,328.00 | 0.00 | 20,328.00 |

57830004  20140818 >122016066< TRUNCATED Neurobrand

| | | | TOTALS: | 42,504.00 | 0.00 | 42,504.00 |

Buckeye Distributing, Inc.